RECEIVED
IN LAKE CHARLES, LA

MAY 11 2006

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **MARIA STE. MARIE, et al.** | : | **DOCKET NO. 06 CV 0054** |
| **VS.** | : | **JUDGE MINALDI** |
| **MIDWEST FREIGHTWAYS, INC., et al.** | : | **MAGISTRATE JUDGE WILSON** |

## MEMORANDUM RULING

Before this court is a Motion to Dismiss pursuant to Rule 12(b)(b) of the Federal Rules of Civil Procedure [doc. 22] filed by defendant, Midwest Freightways, Inc. ("Midwest"). Plaintiffs Marie Ste. Marie, individually and as Next Friend and Natural Tutrix of Michael Ste. Marie, and as Representative of the estate of Ray Ste. Marie, deceased, Andrea Ste. Marie, Timothy Ste. Marie, Dominique Ste. Marie and Brian Ste. Marie (collectively "Plaintiffs") have filed an opposition. For the following reasons, Midwest's Motion is DENIED.

### Factual and Procedural Background

This suit arises from a multiple-fatality automobile accident which occurred on March 21, 2001 in Lake Charles, Louisiana. On June 6, 2001, Plaintiffs filed a lawsuit in Texas to recover damages resulting from the death of their husband and father, Ray Ste. Marie in that accident (the "Texas Lawsuit"). *See Plaintiffs' Original Petition, First Amended Petition, Second Amended Petition, Third Amended Petition, Fourth Amended Petition, Fifth Amended Petition, Sixth Amended Petition, & Seventh Amended Petition.*

In the Texas Lawsuit, Plaintiffs named Midwest, Armando Aguirre ("Aguirre"), Big Lake

Transportation, Inc. ("Big Lake"), Cimarron Coach of Virginia, K&R Express Systems, Inc., London-Charleston, L.L.C., London-Laredo, L.L.C., Robert Rogulic and Quality Construction Specialists, Inc. as defendants. Plaintiffs alleged that Midwest should be liable as the employer of Aguirre, the driver of the 18-wheeler that allegedly caused the accident. Plaintiffs also asserted claims against Midwest for negligence, negligence per se, and gross negligence, claiming that Midwest was engaged in a joint and/or single business enterprise with other defendants and that Big Lake was the alter ego of Midwest.

Midwest immediately filed a special appearance in the Texas Lawsuit contesting jurisdiction. After conducting an evidentiary hearing, the court found no basis for asserting jurisdiction over Midwest and dismissed Midwest from the action with prejudice. Plaintiffs then filed a Motion to Sever the order dismissing Midwest from the Texas Lawsuit. The court granted plaintiffs' request on March 2, 2004. Plaintiffs subsequently proceeded to judgment in the Texas Lawsuit. On March 11, 2005, plaintiffs ultimately obtained a verdict for approximately $3.2 million. A judgment was signed and entered on March 11, 2005. To date, approximately $2 million of that judgment remains unsatisfied.

On January, 26, 2005, plaintiffs filed this suit in the 14th Judicial District Court, Calcasieu Parish in order to litigate its claims against Midwest, namely (1) whether Midwest is the statutory employer of Aguirre under federal law because it leased the tractor-trailer Aguirre was driving at the time of the accident, and (2) whether Midwest should be liable for the unsatisfied portion of the Texas judgment as the alter ego of Big Lake. While in state court, Midwest filed exceptions of "no cause of action" and *"res judicata,"* asserting that Midwest's dismissal with prejudice from the Texas Lawsuit precluded plaintiffs' claims. After its exceptions were denied, Midwest

removed the case to this court. Midwest now raises those same issues here.[1]

## 12(b)(6)

A party is entitled to dismissal under Fed. R. Civ. P. 12(b)(6) when an opposing party fails to state a claim upon which relief may be granted. When considering a motion to dismiss for failure to state a claim, the Court accepts as true all well-pleaded allegations in the complaint and views them in the light most favorable to the plaintiff. *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000) (noting that a court must construe the complaint liberally in favor of the plaintiff); *see also Malina v. Gonzales*, 994 F.2d 1121, 1125 (5th Cir.1993). A motion to dismiss should be granted only when it appears without a doubt that a plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002); *see also Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1067 (5th Cir.1994).

## Law and Analysis

The issue before the court is the effect the Texas state court's dismissal of Midwest on jurisdictional ground from the Texas Lawsuit has on plaintiffs' ability to bring this suit against Midwest. As to any court outside of Texas, the answer to this question is: none.

As a preliminary matter, the court must determine whether Texas or Louisiana law on issue and claim preclusion should be used to determine the estoppel effect, if any, of Midwest's dismissal from the Texas Lawsuit. The Full Faith and Credit Clause of the United States

---

[1] Because Midwest filed a motion to vacate the Louisiana state court judgment prior to removing the case here, the issue of the Texas Lawsuit's preclusive effect was not fully and finally decided. Therefore, Midwest may raise that issue here.

Constitution[2] and the Federal Full Faith and Credit Statute[3] implemented thereunder mandate that a federal court, "give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984)); see also *Parsons Steel v. First Alabama Bank,* 474 U.S. 518, 523, 106 S.Ct. 768, 771, 88 L.Ed.2d 877 (1986) ("[U]nder the Full Faith and Credit Act a federal court must give the same preclusive effect to a state-court judgment as another court of that State would give."); *Durfee v. Duke,* 375 U.S. 106, 109, 84 S.Ct. 242, 244 (1963) (Full Faith and Credit Clause "requires every State to give to a judgment at least the *res judicata* effect which the judgment would be accorded in the State which rendered it."). Accordingly, the preclusive effect of the Texas Lawsuit is determined by Texas law.

Under Texas law, the affirmative defense of *res judicata* or "claim preclusion" requires proof of the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) the parties to the second suit are identical to the parties in the first suit, or in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Amstadt v. United States Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996).

---

[2] "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof." U.S. CONST. art. IV, § 1.

[3] "Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken." 28 U.S.C. § 1738.

Under Texas law, "[A] special appearance may be made by any party...for the purpose of objecting to the jurisdiction of the court over the person or property of the defendant on the ground that such party or property is not amenable to process issued by the courts of [Texas]." Tex. R. Civ. P. 120a(1). By its express terms Rule 120a limits the scope of the court's inquiry in such appearances to the issue of *in personam* jurisdiction. No relief other than dismissal for lack of jurisdiction could have been granted to Midwest during its special appearance proceeding and, in fact, a mere request by Midwest for additional relief would have amounted to a "general appearance" and a waiver of its jurisdictional objection. *Id; see also Exito Electronics Co. v. Trejo*, 142 S.W.3d 302, 307 (Tex. 2004). Further, Rule 120a clearly states that "no determination of any issue of fact in connection with the objection to jurisdiction is a determination of the merits of the case or any aspect thereof." Tex. R. Civ. P. 120a(2); *see also*, 18A Wright, Miller & Cooper, Federal Practice and Procedure 2d, § 4436, pp. 168-170. In sum, the only issue concerning Midwest that was actually adjudicated in the Texas Lawsuit was that Texas courts could not exercise jurisdiction over Midwest. Even though the arguments raised in the Rule 120a proceeding were substantially the same as those presented by plaintiffs here, the court's ruling in favor of Midwest was not a decision on the merits and cannot be used to preclude the claims in the case *sub judice*.

The doctrine of collateral estoppel is equally inapplicable to this case. Under Texas law, collateral estoppel applies when an issue decided in the first action is (1) actually litigated; (2) essential to the prior judgment; and (3) identical to an issue in a pending action. *See Johnson & Higgins, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 521 (Tex.1998). The only issue actually litigated in Midwest's special appearance proceeding and essential to the order dismissing it from the Texas Lawsuit was Midwest's amenability (or lack thereof) to suit in Texas. That same

jurisdictional question is not at issue in this suit, therefore, Midwest's dismissal from the Texas Lawsuit has no estoppel effect on the instant suit.

Midwest also seeks to interpose preclusion by judgment, relying upon Article 425 of the Louisiana Code of Civil Procedure. Article 425 states, in pertinent part, "A party shall assert all causes of action arising out of the transaction or occurrence that is the subject matter of the litigation." LSA-C.C.P. Art. 425A. Article 425 operates in tandem with *res judicata* rules. *Walker v. Howell*, 04-246, p. 3 (La.App. 3 Cir. 12/15/04), 896 So.2d 110, 112. Therefore, these articles must be read *in para materia*. *Walker*, 04-246 at p. 3, 896 So.2d at 112. Further, article 425 "contains no penalty provision; rather, it is merely a reference to the principles of *res judicata.*" *Gaspard v. Allstate Insurance Company*, 04-1502, p. 3 (La.App. 3 Cir. 5/4/05), 903 So.2d 518, 520. "Accordingly, an exception of *res judicata* is the proper procedural vehicle to enforce [article 425's mandate] by barring claims that were or could have been litigated in a previous lawsuit." *Walker*, 04-246 at p. 3, 896 So.2d at 112.

There is little, if any substantive difference between the laws of Texas and Louisiana with respect to *res judicata* and collateral estoppel. The extent to which the laws of the two states differ would not change the court's ruling in the case *sub judice*. In Louisiana, a judgment between the same parties is valid and final as to all causes of action existing at the time of the final judgment arising out of the same transaction or occurrence that is the subject matter of the litigation. LSA-R.S 13:4231 (West 1990).[4] Furthermore, a judgment between the same parties is conclusive in any subsequent action between them with respect to any issue actually litigated and

---

[4] Despite the fact that § 13:4231 is entitled "*res judicata*," it encompasses both claim preclusion and issue preclusion (i.e. "collateral estoppel"). *See Five N. Company, L.L.C. v. Stewart*, 850 So.2d 51, 61 (La.App. 1st Cir. 2003); *see also Hudson v. City of Bossier*, 766 So.2d 738, 743 (La.App 2 Cir., 2000), *writ denied*, 775 So.2d 450, 2000-2687 (La. 11/27/00).

determined if its determination was essential to that judgment. *Id.* The Louisiana Supreme Court has held that "the doctrine of *res judicata* is *strici juris*," that "any doubt concerning application of the principle of *res judicata* must be resolved against its application" and that "the doctrine of *res judicata* cannot be invoked unless all its essential elements are present, and each necessary element must be established beyond question." *Kelty v. Brumfield*, 93-1142 (La. 2/25/94), 633 So.2d 1210, 1215, *rehearing denied*, 93-1142 (La. 3/25/94), 635 So.2d 247.

Midwest was dismissed from the Texas Lawsuit on jurisdictional grounds prior to any determination on the merits. Thus, it was not a party to the final judgment rendered in that case. Further, with respect to Midwest's role in the Texas Lawsuit, only the issue of Texas' lack of jurisdiction over Midwest was actually litigated and essential to the Texas court's decision to dismiss Midwest. Since Midwest cannot meet the elements of *res judicata*, it follows that Article 425 must also fail as a means to bar plaintiff's claims.[5] Accordingly, Midwest's Motion to Dismiss [doc. 22] is DENIED.

Lake Charles, Louisiana, this 10 day of May, 2006.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[5] Further, in *Breaux v. Avondale Indus.*, 842 So.2d 1115 (La. App. 4 Cir. 2003), the court noted that Article 425's applicability is "not absolute, and will yield to the interests of justice." *Id.* at 1123. As noted by state court Judge Quienalty during the hearing on Midwest's peremptory exception, "...if in fact a statutory employer, I cannot permit [Midwest] to escape by reason of *res judicata* or preclusion...[under] Art. 425...simply because of a jurisdictional judgment in the state of Texas." *See Transcript of Hearing Before Judge Quienalty*, at p. 81 (attached as Exhibit A to Plaintiffs' Memorandum in Support of their Response to Midwest's Motion to Dismiss). Further, Midwest complains of a multiplicity of suits yet it was their own refusal to avail themselves to the jurisdiction of Texas that gave rise to this suit. Midwest now must live with the consequences of that decision.