RECEIVED
IN LAKE CHARLES, LA
NOV - 2 2007
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| | | |
|---|---|---|
| MARIA STE. MARIE, ET AL | : | DOCKET NO. 2:06 CV 0054 |
| VS. | : | JUDGE MINALDI |
| MIDWEST FREIGHTWAYS, INC. | : | MAGISTRATE JUDGE WILSON |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment on the issue of whether Midwest was the carrier lessee under Interstate Commerce Commission ("ICC") regulations, filed by the Ste. Marie plaintiffs [doc. 54]. The defendant, Midwest Freightways, Inc. ("Midwest"), filed a Memorandum in Opposition to Plaintiffs' Motion for Summary Judgment [doc. 58]. The Ste. Marie plaintiffs filed a Reply [doc. 59].

## FACTS

This suit arises out of an accident between the Ste. Marie plaintiffs' decedent, Ray Ste. Marie, who was a passenger in a van operated on behalf of his employer.[1] Mr. Ste. Marie was killed when the van was rear-ended on March 21, 2001 by an eighteen-wheeled truck and trailer operated by Armando Aguirre.[2] The plaintiffs originally sued Aguirre, Big Lake, and Midwest in the 333rd Judicial District Court of Harris County, Texas.[3] On December 22, 2004, Big Lake

---

[1] Compl. ¶ 9.

[2] *Id.*

[3] Pl.'s Statement of Material Facts in Support of Pl.'s Mot. for Summary Judgment 1.

1

stipulated that Aguirre was an employee of Big Lake, that Aguirre's negligence caused Mr. St. Marie's death, and that Big Lake was responsible for Aguirre's damages.[4] On March 11, 2005, a Texas court entered judgment against Big Lake for $2,630,929.51.[5] Big Lake has paid $399,000, leaving a balance of $2,231,929.51 unpaid.[6] The St. Marie plaintiffs filed this suit to procure the outstanding balance from Midwest.

In December of 2000, Banc One and Midwest entered into a leasing agreement for trucking equipment whereby Midwest would pay Banc One approximately $33,000 per month for two years.[7] In March 2001, Midwest and Big Lake entered into a Permitted Use Agreement, which provides that the Permitted User, Big Lake, has the right to use and possess Midwest's equipment.[8] The Permitted Use Agreement states that the lease between Banc One and Midwest is the "Prime Lease."[9] The Permitted Use Agreement also provides that Midwest would retain absolute and unconditional liability for all obligations under the Prime Lease, including indemnification.[10] The next phrase of the lease states that Midwest will retain all liability to Banc One for rent and other payments due under the Prime Lease.[11] Big Lake is licenced to

---

[4] Pl.'s Mem. in Support of Mot. for Summary Judgment 2-3.

[5] *Id.* at 2.

[6] Pl.'s Mot. for Summary Judgment 3.

[7] Pl.'s Ex. A.

[8] Pl.'s Ex. C.

[9] *Id.*

[10] *Id.*

[11] *Id.*

operate in forty-eight states through permits from the Federal Highway Safety Administration.[12] Midwest is a holding company and does not haul any freight.[13]

In his deposition, Jeffrey Alan Levin, former Chief Financial Officer of Midwest, stated that Midwest was the lessee.[14] Levin also stated that Banc One was one of Big Lake's lessors.[15] Also via deposition, Jonathan W. Hall, presumably an employee of Big Lake, stated that Big Lake leased all of its trucks from Midwest.[16] The accident report lists Big Lake as the ICC carrier for whom Aguirre was driving.[17]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the file, including the opposing party's affidavits, demonstrates that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The Federal Rules also permit a court to issue summary judgment on a portion of a plaintiff's claim. FED. R. CIV. P. 56(a) & (c). The party moving for summary judgment is initially responsible for demonstrating the reasons justifying the motion for summary judgment by identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact for trial. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951,

---

[12] Def.'s Ex. A p. 44-45.

[13] *Id.* at 114, 56.

[14] Pl.'s Ex. B p. 48.

[15] *Id.* at 47-48.

[16] Def.'s Ex. A p. 46.

[17] Pl.'s Ex. D.

3

954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant satisfies this burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1975). There is no genuine issue for trial, and thus a grant of summary judgment is warranted, when the record as a whole "could not lead a rational finder of fact to find for the non-moving party...." *Id.*

## LAW

Interstate Commerce Commission ("ICC") law governs when there is a leasing agreement between interstate carriers and private owners of trucks used in interstate commerce. *Mercer Transp. Co. v. Greentree Trans. Co.*, 341 F.3d 1192, 1195 (10th Cir. 2003). In 1956, Congress amended the Federal Motor Carrier Safety Regulations ("FMCSR") to require interstate motor carriers to assume full direction and control of the vehicles they leased "as if they were the owners of such vehicles" to protect the public from the tortious conduct of the often judgment-proof truck lessor-operators. *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 37 (Tex. App. 2002). The purpose of the amendment was to ensure that interstate motor carriers would be "fully responsible for the maintenance and operation of the leased equipment, and the supervision of the borrowed drivers, thereby protecting the public from accidents, preventing public confusion about who was financially responsible if accidents occurred, and providing financially responsible defendants." *Id.*

A motor carrier is a "person providing commercial motor vehicle transportation for

compensation." 49 U.S.C. § 13102(14). A person may provide transportation or service, or be a broker for transportation only if the person is properly registered by the Secretary of Transportation. *Id.* § 13901. A broker is defined as someone who arranges for transportation for compensation. *Id.* § 13102(2).

Following the amendment, the ICC issued federal regulations providing that:

> The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.

49 C.F.R. § 376.12(c)(1); *see also Morris*, 78 S.W.3d at 38 (Congress requires interstate motor carriers to assume full direction and control of the vehicles they lease "as if they were the owners of such vehicles"). Thus, the regulations require that the carrier lessee "assumes complete responsibility for the operation of the equipment." *Id.* The regulations require that a certificated interstate carrier leasing equipment enter into a written agreement with the owner providing that the carrier-lessee shall have exclusive possession and assume complete responsibility for the operation of the equipment during the lease. 49 C.F.R. § 376.11-12(c)(1). Under 49 C.F.R. § 376.12, the lease must be between the owner and authorized carrier; specify the duration; confer exclusive possession and control onto the authorized carrier, detail the compensation the authorized carrier will pay, and define which party is responsible for what equipment, the payment period, and insurance. Moreover, the carrier is vicariously liable for the negligence of its statutory employees as a matter of law. *Morris*, 78 S.W.3d at 39. Compliance with these regulations creates an irrebuttable presumption of an employment relationship sufficient to

establish the carrier's liability for injuries. *Zamalloa v. Hart*, 31 F.3d 911, 917 (9th Cir. 1994).

The Fifth Circuit interpreted the ICC regulations in *Simmons v. King*, 478 F.2d 857 (5th Cir. 1973). In *Simmons*, a truck driver's negligence caused an accident, and the *Simmons* court held that under the FMCSR, the lessee was liable as a matter of law for the accident, since the authorized carrier lessee became the driver's statutory employer, and, as such, was responsible for accidents occurring with the leased equipment. *Id.* at 864-67. The *Simmons* court found that the lessor, Ace, was not liable as a statutory employer under the FMCSR, but could be found liable under another civil law theory. *Id.* at 868. *See also Hiltgen v. Sumrall*, 47 F.3d 695 (5th Cir. 1995) (holding that where a carrier-lessee has exclusive use and possession of trucking equipment, the lessee becomes the statutory employer of the driver and is vicariously liable for the driver's negligence).

The ICC regulations apply equally to carrier lessors and truck owners who are not common carriers. *Zamalloa*, 31 F.3d at 913. The regulations do not permit a common carrier to share control or responsibility with an owner-driver. *Id.* at 915 (noting that two common carriers may share liability because the purpose of the regulations is to prevent carriers from avoiding liability).

Liability attaches under the ICC when the carrier and vehicle owner have signed a written lease. *Id.* at 917. The *Zamalloa* court held that liability can also attach through an oral lease. *Id.* (noting that no court has ever held that a written lease is a condition precedent to imposing statutory liability on carrier lessees). In *Wilson v. Riley Whittle, Inc.*, the court found the absence of a written lease "irrelevant," and emphasized that the public policy behind 49 C.F.R. § 1057

6

would be frustrated if the carrier lessee was permitted "to evade the liability imposed upon it...by asserting that a written trip lease was a condition precedent to any contract between the parties." 701 P.2d 575, 579 (Ariz. Ct. App. 1985). The *Zamalloa* court discussed *Wilson* with approval, noting that the carrier lessees cannot benefit from their failure to comply with the ICC regulations and must assume statutory liability for the actions of their drivers. *Zamalloa*, 31 F.3d at 918 (finding that the only remaining issue was whether a jury could have reasonably found that the evidence supported the creation of an oral lease).

## ANALYSIS

The ICC regulations exist to ensure that carrier lessees assume responsibility for accidents that occur when the vehicle is their use and possession. *Morris*, 78 S.W.3d at 37. A motor carrier is a person who provides commercial motor vehicle transportation for compensation. 49 U.S.C. § 13102(14). At the outset, the plaintiffs have not presented any evidence that Midwest is a carrier under the ICC regulations. The only evidence in the record pertaining to whether Midwest is a carrier is deposition testimony that Midwest is a holding company and does not haul any freight. Thus, because Midwest is not a carrier, only Midwest or Big Lake can be held liable as a statutory employer under the ICC. *See Zamalloa*, 31 F.3d at 913 (noting that only two carriers can be joint statutory employers).

Next, liability attaches to the carrier lessee through a valid lease. Although a written lease that complies with the requirements articulated in 49 C.F.R. § 1057 creates an irrebuttable presumption of the lease's validity, parties may also create a lease orally. *Zamalloa*, 31 F.3d at 917. Courts have imposed liability through oral leases to further the policy of the FMCSR,

which is to prevent carrier lessees from evading their responsibility to the public. *Id.* Here, the Permitted Use Agreement between Midwest and Big Lake clearly does not comply with the requirements of 49 C.F.R. § 1057. It does not even confer the exclusive use and possession to Big Lake. Under *Zamalloa*, however, compliance with 49 C.F.R. § 1057 is not determinative of whether a lease existed. Thus, the court must examine whether there is a genuine issue of material fact as to whether an oral lease was created.

The parties contracted for Big Lake's use of the equipment in the Permitted Use Agreement. The deposition testimony of Mr. Hall states Big Lake sub-leased all of its trucks from Midwest. The official accident report lists Big Lake as the ICC-certified carrier at the time of Mr. Ste. Marie's death. The deposition testimony of Mr. Hall states that Big Lake paid Midwest a monthly sum in consideration of the leases. All of this evidence precludes this court from accepting the plaintiffs' position that the parties did not create a valid lease. At the very least, there is a triable issue of fact on whether the parties created an oral lease. Because Midwest has not filed a cross-motion for summary judgment on this issue, the court need not decide whether Midwest is entitled to judgment as a matter of law on the plaintiffs' statutory employer theory.

As the *Simmons* court aptly noted, the fact that a lessor was not liable under a statutory employer theory pursuant to the ICC regulations does not preclude a court from finding the lessor liable under another non-statutory theory. *See* 478 F.2d at 868. Because the parties did not brief and argue the remaining theories of liability, those theories, including the alter ego, respondeat superior, and single business enterprise theories, remain as possible grounds for recovery. Although this court does not find that the ICC regulations confer statutory employer liability on a

non-carrier lessor, in reaching this conclusion, the court observes that the relationship between Midwest and Big Lake is unique, and by no means does this ruling foreclose the possibility of a grant of summary judgment on the other theories plaintiffs pled.[18]

For the reasons stated in this Memorandum Opinion, the plaintiffs' Motion for Summary Judgment on the statutory employer theory is hereby DENIED.

Lake Charles, Louisiana, this ___ day of _____, 2007.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[18] In fact, Mr. Hall's deposition revealed that a Midwest employee is authorized to withdraw money on Big Lake's accounts. Def.'s Ex. A. This court also finds it curious that at one point Big Lake owned these trucks, sold them to Banc One who leased them to Midwest, not Big Lake, for a better interest rate. Def.'s Ex. B.

9